UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

JEROME POWELL JR.,

        Plaintiff,                  Case No. 2:12-cv-440

v.                                              Honorable R. Allan Edgar

DANIEL H. HEYNS, et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

    I.       Factual allegations

Plaintiff Jerome Powell Jr., a state prisoner currently incarcerated at the Chippewa Correctional Facility (URF), filed this civil rights complaint pursuant to 42 U.S.C. § 1983 against Defendants MDOC Director Daniel H. Heyns and URF Warden Jeff Woods. Plaintiff alleges that while he was confined at the Oaks Correctional Facility (ECF), he was threatened by a member of the "Latin Kings," which is a Security Threat Group (STG). Plaintiff's request for protection was refused. On February 21, 2012, Plaintiff was attacked by a Latin King member, who slashed Plaintiff's neck and inner hand with a razor type extended weapon. Plaintiff was subsequently transferred to URF.

When Plaintiff arrived at URF, he was threatened by members of the Latin Kings who were also confined at URF. Plaintiff requested that he be placed in protective custody and on August 2, 2012, Sergeant Ormsbee submitted a request for protection / investigation report on behalf of Plaintiff. On August 6, 2012, Deputy T. Mackie and Deputy C. Haton denied Plaintiff's request, stating that Plaintiff could not identify any situation or immediate threat. Plaintiff attaches a copy of the report as Exhibit D to his complaint, which indicates that Plaintiff claimed to have been threatened by a Latin King member with a home-made prison shank while in Round Unit at URF. Sergeant Ormsbee indicated that he could not find a history of Plaintiff's previous request for

protection on "IMS."[1] As asserted by Plaintiff, his request was denied because he could not identify any situation or immediate threat. (Docket #1-4, p. 2 of 4.)

Plaintiff filed a grievance regarding the denial of protective custody, and in the step I response, URF Resident Unit Manager Robert Norton notes that Plaintiff had been seen by the Security Classification Committee (SCC) on August 6, 2012. Norton further states:

> Prisoner states he was in ECF and he had an incident with the leader of the Latin Counts and he put a hit out on him. Prisoner can not refer or state where this alleged incident happened. There is no information to support prisoner claims and he can not answer questions as to what was said or where it took place. PC was denied and prisoner was given an order to go to general population. Prisoner refused to go as ordered. Prisoner has refused two like orders and is currently on detention status until 11/09/12. The decision of the SCC remains the same.
>
> PD 04.05.120 Segregation Standards addresses this issue and states, "A prisoner may be classified voluntarily or involuntarily to protective segregation. A prisoner shall be classified to protective segregation only if SCC determines that ther is a reasonable basis to believe the prisoner needs protection, based on a review of the facts provided by the prisoner." Grievant has been ordered to return to General population and the failure to do so has resulted in the issuance of misconducts. No violation of policy or procedure exists.

(Docket #1-4, p. 4 of 4.)

Plaintiff states that he is currently being housed in segregation in level IV because of his refusal to return to the general population. Plaintiff continues to fear for his safety should he return to the general population. Plaintiff's continued refusal to return to the general population is

---

[1] The Institution Management System (IMS), is an electronic system that tracks a variety of prisoner-related areas in order to enhance the accuracy of actions taken regarding prisoner activities, classification and property. *See* http://www.michigan.gov/documents/corrections/2009-07-23_286848_7.pdf

resulting in the issuance of tickets for disobeying a direct order (DDO). Plaintiff seeks injunctive relief.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

The only named Defendants in this case are MDOC Director Daniel H. Heyns and Warden Jeff Woods. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing

that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Heyns and Woods were personally involved in the activity which forms the basis of his claim. The only roles that Defendants Heyns and Woods had in this action involve the denial of administrative grievances or the failure to act. Defendants Heyns and Woods cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendants Heyns and Woods are properly dismissed for lack of personal involvement.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: 6/25/2013         /s/ R. Allan Edgar
                         R. Allan Edgar
                         United States District Judge